430 F.2d 85
 PEACOCK RECORDS, INC., a Texas corporation, and Don D. Robey, Plaintiffs-Appellees,
v.
CHECKER RECORDS, INC., an Illinois corporation, Chess Record Corporation, an Illinois corporation, and Phil Chess and Leonard Chess, Defendants-Appellants.
 No. 17757.
 United States Court of Appeals, Seventh Circuit.
 August 6, 1970.
 Rehearing Denied September 29, 1970.
 
 A. Bradley Eben, John H. Burton, Chicago, Ill., for appellants.
 William R. Ming, Jr., Sophia H. Hall, Chicago, Ill., for appellees.
 Before SWYGERT, Chief Judge, and CUMMINGS and KERNER, Circuit Judges.
 KERNER, Circuit Judge.
 
 
 1
 Defendants-appellants Checker Records, Inc. (Checker), Chess Record Corporation, Illinois corporations, and Phil Chess and Leonard Chess, appeal from a judgment arising out of a diversity action in the district court, awarding plaintiffs-appellees, Peacock Records, Inc., (Peacock), a Texas corporation, and Don D. Robey, $350,000 (encompassing compensatory and punitive damages) for tortious contractual interference. We reverse and remand.
 
 
 2
 Defendant-appellant Checker and plaintiff-appellee Peacock are engaged in the recording, manufacture, and sale of phonograph records throughout the United States. The plaintiffs' complaint in the district court consisted of five counts alleging that:
 
 
 3
 (I) Defendants entered into a scheme and plan to interfere with plaintiff Peacock's rights under an exclusive contract for the personal services of a vocalist group known as the Five Blind Boys (Blind Boys), executed on October 5, 1960;
 
 
 4
 (II) A violation by defendants of plaintiffs' contractual rights created on July 5, 1959, to the personal recording services of one Reverend Robert Ballenger;
 
 
 5
 (III) A conspiracy by defendants to interfere with plaintiff Peacock's contractual rights described in Counts I and II;
 
 
 6
 (IV) Injunctions should be granted against interference with plaintiffs' contracts by defendants;
 
 
 7
 (V) Defendants' fraudulent interference with plaintiff Don Robey's contractual relations with composers Loyd Woodard and Roscoe Robinson of October 5, 1960.
 
 
 8
 Defendant Checker in addition to its answer denying the existence of Peacock's alleged contracts on the dates claimed, filed a two-count counterclaim alleging that plaintiffs interfered with defendants' exclusive recording contract of December 22, 1960, with the Blind Boys and plaintiffs conspired with members of the Blind Boys for the purpose of maliciously prosecuting defendants, including the present law suit.
 
 
 9
 The cause was originally tried in September of 1963 before the Honorable District Judge J. Sam Perry sitting without a jury. At the conclusion of all the evidence, the trial judge awarded plaintiffs compensatory and punitive damages totalling $250,000, subsequently reduced on defendants' motion to $150,000.
 
 
 10
 While appeal of that judgment was pending, defendants, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, filed a motion (supported by affidavits and sworn statements) to vacate the judgment on the grounds that it had been fraudulently obtained by means of perjured testimony suborned by plaintiffs.
 
 
 11
 The alleged perjured testimony involved the testimony of three members of the Blind Boys, Loyd Woodard, J. T. Clinkscales and Lawrence Abram. These three performers offered testimony at the first bench trial to support plaintiffs' allegation (contained in Counts I, III and V) that the three-year contracts were executed between plaintiff Peacock and the five Blind Boys on October 5, 1960, and that defendants were so advised of this October 5 contract before they contracted with the Blind Boys on December 22, 1960. Subsequent to this testimony, the three Blind Boys in sworn statements declared that their testimony at the first trial was false and perjured. The Blind Boys in the form of sworn statements stated that their contract with Peacock was not in fact executed by them until Spring of 1961, but was predated to October 5, 1960.
 
 
 12
 The lower court denied defendants Rule 60(b) motion refusing to hear the testimony of the three Blind Boys and from that denial defendants appealed.
 
 
 13
 This court in Peacock Records, Inc. v. Checker Records, Inc., 365 F.2d 145 (7th Cir. 1966), held that the failure of the trial court to grant the 60(b) motion, in light of the assertion that the judgment was obtained by fraudulent means, i. e., perjured testimony, the submission of affidavits supporting the motion, and the perjuring witnesses' willingness to testify (after being told of their constitutional rights) was a failure "to exercise a sound legal discretion." Id. at 148. Consequently, this court reversed and remanded with instructions for a new trial.
 
 
 14
 On appeal from a $350,000 verdict in favor of plaintiff Peacock in the second trial, the defendant-appellant Checker raises the following allegations of error:
 
 
 15
 (1) That the trial judge committed reversible error in denying defendants' motion to recuse himself filed pursuant to 28 U.S.C. § 144;
 
 
 16
 (2) That the trial court erred in denying defendants' motion for a directed verdict based on the alleged failure of plaintiffs to prove essential elements of the tort charged in their complaint;
 
 
 17
 (3) That the trial court erred in considering at the second trial of this cause evidence offered by plaintiffs only at the first trial;
 
 
 18
 (4) That a substantial number of the trial court's findings of fact on material matters are clearly erroneous;
 
 
 19
 (5) That the trial judge committed several errors in his computation of damages.
 
 
 20
 We find that the trial judge committed reversible error by not granting defendants' motion to recuse himself pursuant to 28 U.S.C. § 144 and, therefore, need not reach the other allegations of error raised by defendant-appellant Checker. 28 U.S.C. § 144 states in pertinent part:
 
 
 21
 Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
 
 
 22
 The defendants' affidavit in support of their Section 144 motion in the instant case contained the following allegations:
 
 
 23
 (1) That three of the Blind Boys who testified on behalf of the plaintiffs at the first trial that their contract was executed on October 5, 1960, thereafter recanted this testimony and confessed under oath that it was entirely false, perjured and suborned by plaintiff Robey;
 
 
 24
 (2) That these confessions were in the form of sworn statements which set forth circumstances alleging a conspiracy between plaintiffs and the Blind Boys to support the predating to October 5, 1960, of the contracts between plaintiffs and the Blind Boys, when in fact the contract was not executed until the Spring of 1961;
 
 
 25
 (3) That when these sworn statements came before the judge pursuant to defendants' 60(b) motion, he declined to hear from these three witnesses who in open court indicated to him their willingness and desire to testify to their perjuries and set out the true facts;
 
 
 26
 (4) That the refusal of the trial court judge to hear these witnesses was based on his expressed belief that the three Blind Boys' recantations and confessions were false and had been procured by the payment of money to them by defendants;
 
 
 27
 (5) That defendants at the new trial would call on their behalf these three Blind Boys as witnesses, who would testify as to their perjuries in the first trial in accordance with their statements filed in support of defendants' Rule 60(b) motion and that testimony would go directly to the heart of the issues posed by the pleadings;
 
 
 28
 (6) That because of the trial judge's preconceived fixed belief in advance of the new trial as to the falsity of the witnesses' confession, he could and would not consider their testimony to be given on defendants' behalf at the second trial;
 
 
 29
 (7) That the trial judge at the new trial would, however, consider all of the evidence taken at the first trial. Thus, defendants on the new trial would be confronted with the perjured testimony of Woodard, Clinkscales and Abram which would be given weight despite their recantations whereas their testimony to the true facts would be given no weight at all.[1]
 
 
 30
 For the purpose of a 28 U.S.C. § 144 motion, the facts contained in the affidavit for disqualification are to be taken as true, see e. g., Berger v. United States, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); Wolfson v. Palmieri, 396 F.2d 121 (2d Cir. 1968); Tucker v. Kerner, 186 F.2d 79, 85 (7th Cir. 1950). Taking the facts as true, the trial judge then must assess their legal sufficiency:
 
 
 31
 To be sufficient an affidavit must show "the objectionable inclination or disposition of the judge"; it must give "fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." [Berger v. United States, 255 U.S. at 33-35, 41 S.Ct. at 233.] Rosen v. Sugarman, 357 F.2d 794, 798 (2d Cir. 1966).
 
 
 32
 We find the affidavits supporting defendants' motion to recuse to have been legally sufficient and, therefore, hold that the failure to grant such motion was error.
 
 
 33
 After the judgment was entered in the first trial, the defendants filed a Rule 60(b) motion to vacate the judgment on the basis of the changed testimony of the three Blind Boys. The trial judge denied the motion stating in part that:
 
 
 34
 It is inherently incredible that these affiants, three of whom are blind, voluntarily, offered to admit that they committed perjury on the trial of this case particularly in the light of the admission by defendants that they paid money to another witness in this cause, Wilmer Broadnax, to make a false pre-trial sworn statement, and the evidence that they also paid Abram to make a false pre-trial statement.
 
 
 35
 On appeal from this denial of the 60(b) motion, this court in Peacock Records, Inc. v. Checker Records, Inc., supra, held that the trial court's failure to grant the motion in the face of the "verified motion, under 60(b) sworn testimony in open court, which was unimpeached and which so clearly supported the motion * * * the [trial] court failed to exercise a sound legal discretion." Id. 365 F.2d at 148. This court consequently issued a mandate ordering that the case be remanded for a new trial. This mandate was controlling upon the district court and required it to hold a "trial de novo," see e. g., Shell Petroleum Corporation v. Shore, 80 F.2d 785, 786 (10 Cir., 1935). Crucial to the determination in a new trial would be the testimony of the three Blind Boys as to the execution date of the contract with Peacock.
 
 
 36
 While the fact that a trial judge has formed opinions based on the evidence at the first trial, does not disqualify him from hearing the retrial of the case, see e. g., United States v. Bolden, 355 F.2d 453, 456 (7th Cir. 1965); Tucker v. Kerner, 186 F.2d 79, 84-85 (7th Cir. 1950), such opinions must be based on direct evidence introduced at the first trial and not based on mere speculation unsupported by the record. Findings by a trial judge unsupported by the record are evidence that the judge has relied on extrajudicial sources in making such determinations indicating personal bias and prejudice. Cf. United States v. Grinnell, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).
 
 
 37
 We find nothing in the record of the first trial which is supportive of the judge's determination that the recantation of the three Blind Boys was suborned by the defendants and, therefore, perjured. Lawrence Abram's pre-trial deposition was on behalf of plaintiffs, not defendants, and we find the record of the first trial insufficient to support any conclusion that the subsequent recantation of his testimony was suborned perjury by defendants. In addition, the fact that defendants admitted in the first trial that two witnesses were paid to testify for defendants (Roscoe Robinson and James Clay Jackson) and that Wilmer Broadnax was paid to make a pre-trial sworn statement does not in any way establish the trial judge's finding that three different witnesses (Abram, Clinkscales and Woodard) were paid by defendants to recant their testimony and admit to having committed perjury in open court even after the court had warned them of their constitutional rights and had appointed counsel for them.
 
 
 38
 There is a substantial difference between admissions that witnesses were paid to testify for a party, not indicating whether the testimony was true or false, and evidence supporting a finding that witnesses were paid to admit to having committed perjury. We find such admissions by defendants not supportive of the trial judge's finding that the three Blind Boys' recantations were perjury suborned by defendants.
 
 
 39
 In addition, the trial judge indicated in direct contravention of this court's mandate in Peacock Records, Inc. v. Checker Records, Inc., supra, that he would consider anew in the second trial all the evidence he heard at the first trial, consequently including the testimony at the first trial of the three Blind Boys (Abram, Clinkscales and Woodard). The trial judge indicated his intention to consider the testimony introduced at the first trial despite this court's finding in Peacock Records, Inc. supra, that the sworn statements by the three Blind Boys was unimpeached and clearly supportive of their declaration that perjury was committed at the first trial and should not have been disregarded by the trial judge.
 
 
 40
 Consequently, we hold that defendants' affidavit alleging the trial judge's prejudgment, without any basis in the record of the first trial, that the new testimony by the three Blind Boys was suborned perjury and the trial judge's intention to consider all the evidence of the first trial anew in the second trial in direct violation of this court's "de novo" remand in Peacock Records, Inc., supra, (thus including the original testimony of the three Blind Boys) indicated "whether consciously or not a personal bias and prejudice which renders invalid any resulting judgment in favor of the party so favored." Knapp v. Kinsey, 232 F.2d 458, 466 (6th Cir. 1956). We find that defendants' allegations contained in their motion to recuse were legally sufficient to require that the trial judge, pursuant to 28 U.S.C. § 144, grant defendants' motion.
 
 
 41
 We therefore reverse and remand with directions that a new judge hear the retrial of this cause.
 
 
 42
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 During the colloquy, on defendants' motion to recuse, their counsel suggested that if the trial court would impanel a jury to hear the issues at the new trial, it would not be necessary to press the matter further since such a jury would determine questions of fact and matters of credibility. The trial judge in ruling on this stated that he would deny a jury trial even if the parties agreed thereto because such a trial could "compel new testimony all the way from start to finish." We need not decide whether the use of a jury at the retrial would have prevented error in this case